HUGHES *v.* LOVE.

PARTNERSHIP — ACCOUNTING — DECREE — CONSTRUCTION — MARKET
  VALUE.
    Where, on a bill for partnership accounting, the cause is re-
    ferred to a commissioner to state the account, with directions
    to charge defendant with the amounts received by him from
    the sale of certain timber if it can be ascertained from defend-
    ant's books, and, if not, then with the market value, and to
    credit defendant with the original cost of the timber, the ex-
    pense of manufacturing and selling the same, with interest
    on money advanced by defendant, defendant is chargeable
    with what he received at retail, and is not entitled to have
    the same charged at its wholesale market value.

Appeal from Mecosta; Palmer, J. Submitted Novem-
ber 15, 1904. (Docket No. 79.) Decided November 29,
1904.

Bill by Fred W. Hughes against William Love for a
partnership accounting. From a decree settling the ac-
count, defendant appeals. Affirmed.

*Mark Norris* and *Albert Crane*, for complainant.

*R. A. & W. E. Hawley*, for defendant.

MOORE, C. J. This case has been here before. It is
reported in 129 Mich. 145. A reference to the opinion
there filed will aid in understanding the questions in-
volved here. After the case was affirmed here, an ac-
counting was had before a circuit court commissioner,
who found there was due the complainant $4,112.70. Ex-
ceptions were taken to the findings of the commissioner,
and a hearing was had before the circuit judge, who sus-
tained the findings. The case is brought here by appeal.

Most of the questions involved are questions of fact,
which have required an examination of the record, but do

not call for discussion. One question, however, is an important one, and its disposition will necessarily dispose of many of the others. It grows out of what construction should be put upon the decree which was affirmed by this court when the case was here before.

The claim of counsel for defendant is clearly stated in his brief, as follows:

"The decree in this case provides, in reference to the manner of stating the account, as follows:

"'That this cause be referred to Alton W. Bennett, Esq., one of the commissioners of this court, to take and state the account between the parties hereto touching the transaction aforesaid; that in stating said account the commissioner charge the said defendant with the amounts received by him from the sale of said timber, lumber, bark, and other forest products, if the same can be ascertained from defendant's books, and, if not, then with the market value thereof; that the commissioner credit the defendant the original cost of said timber, etc., and the expense of cutting, logging, hauling, manufacturing, and selling the same, with interest on the money advanced by defendant, at six per cent. per annum; that defendant also be credited with the loss in closing out his Portland store, not exceeding $300 in all for that item.'

"It will be observed that the decree provides that the defendant be charged with the amounts received by him from the sale of said timber, etc., if the same can be ascertained from defendant's books, and, if not, then with the market value thereof. Upon the hearing we urged that under this decree the defendant was to be charged with the amount received by him from the sale of the Robbins timber; that he was not to be charged, under this decree, with moneys received from the sale of some other timber. It is obviously the meaning of the decree, and any other decree would be a most unjust and oppressive confiscation of property. This amount was to be determined, if it could be, from defendant's books. It was to be determined by tracing the timber derived from the Robbins land by the aid of defendant's books, and ascertaining how much the defendant received for this particular timber. By the aid of defendant's camp books it is easily and readily ascertained how much he received for a considerable portion of this timber product, to wit, wood, bark, posts, poles, and railroad ties, and a portion of the lumber, for the reason that the books show to whom it

was sold, and for what price, and how much was paid; but, so far as a large portion of the lumber and the shingles were concerned, it was practically impossible to ascertain how much was sold and how much was salable, or when the same was sold, or what amount was received therefor. Under those circumstances we urge that what the complainant is entitled under the decree to receive for such lumber and shingles is the market value thereof. The question, therefore, arises what was the market value thereof, and how can the same be ascertained? We contend that the term 'market value' should, under the circumstances of this case, be construed to mean the value of this material at wholesale at Millbrook."

It was the idea of the commissioner that, as he was unable to ascertain from the books of the defendant the amounts received by him for the various forest products, he should be charged with the average retail price at the Portland yard, and credited with the original cost of the timber and the expenses for preparing the same for market and the cost of selling the products manufactured therefrom. Which of these constructions is the right one? A portion of the decree which was affirmed in this court reads as follows:

"The defendant has cut, removed, and disposed of or appropriated to his own use, and sold through his own lumber yard at Portland, Michigan, all of the timber, lumber, bark, and other forest products taken and manufactured from the lands aforesaid, and received the proceeds thereof; but, although thereto requested, has refused to account to complainant for his share of said proceeds. Therefore it is further ordered, adjudged, and decreed that this cause be referred to Alton W. Bennett, Esq., one of the commissioners of this court, to take and state the account between the parties hereto touching the transaction aforesaid; that in stating said account the commissioner charge the said defendant with the amounts received by him from the sale of said timber, lumber, bark, and other forest products, if the same can be ascertained from the defendant's books, and, if not, then with the market value thereof; that the commissioner credit the defendant with the original cost of said timber, etc., and the expense of cutting, logging, hauling, manufacturing, and selling

the same, with interest on the money advanced by defendant at 6 per cent. per annum; that defendant also be credited with the loss in closing out his Portland store, not exceeding $300 in all for that item."

This language is not ambiguous, but clearly contemplates that defendant shall be charged with what he received at retail for these products, and shall be credited with the cost of the timber and the expenses incurred by him in its manufacture and sale. We are of the opinion the commissioner and the circuit judge put a right construction on the language of the decree.

The decree is affirmed, with costs.

The other Justices concurred.